IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 16, 2008

## IN RE K.E.D.M. a/k/a/ K.E.D.S

**Appeal from the Juvenile Court for Hamblen County**
**No. 13882      Mindy N. Seals, Judge**

---

**No. E2008-00150-COA-R3-PT - FILED AUGUST 27, 2008**

---

The issue presented in this parental termination case is whether it was shown by clear and convincing evidence that termination was in the best interest of the child. After careful review, we hold that the evidence preponderates against the trial court's finding that there was clear and convincing evidence that termination was in the best interest of the child. Accordingly, we reverse the judgment of the trial court and dismiss the petition to terminate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed; Case Dismissed**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Gerald T. Eidson, Rogersville, Tennessee, for the Appellant, A.E.S.

Robert E. Cooper, Jr., Attorney General and Reporter; Lauren S. Lamberth, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee, Department of Children's Services.

**OPINION**

*I. Background*

In this appeal, we address the termination of parental rights of A.E.S. ("Mother") to her child, K.E.D.M.[1] ("Child").[2]  Child was born on November 3, 2004, weighing four pounds, five ounces and suffering from a respiratory syncytial virus ("RSV").  On November 8, 2004, the Tennessee Department of Children's Services ("DCS") filed a petition for temporary custody of Child in the Hamblen County Juvenile Court, alleging that Child was dependent and neglected.  On the same day, Child was taken into DCS protective custody and placed with foster parents.  Following a hearing, the court found that Mother had tested positive for marijuana at the time of Child's birth and admitted to smoking marijuana during her pregnancy.  Mother also admitted to using cocaine during the first three months of her pregnancy, although she stopped using the drug when she learned she was pregnant.

On November 22, 2004, DCS entered into a permanency plan with Mother with the goal of reunification.  The permanency plan provided for regular visitation with Mother and required Mother to have continuous negative drug screens and to maintain a stable, safe, and drug and alcohol free home for Child.

On February 23, 2005, DCS began a trial placement of Child with Mother in order to give Mother an opportunity to demonstrate that she was able to properly care for child.  The trial placement was terminated on August 17, 2005, after Mother tested positive for methamphetamine and amphetamine and admitted to using methamphetamine.  On September 21, 2005, Child was adjudicated dependent and neglected and placed with her biological father.  She was removed from his custody by a protective custody order on December 28, 2005, due to violence in the father's home.

By December of 2005, Mother progressed to having unsupervised visits with Child.  These visits were terminated by order entered on April 18, 2007, after the court found that Mother used poor judgment and represented to the court that she would be living alone when in fact Mother's mother, who had drug issues, and an uncle, who had mental health issues, were living in the home.  There was an incident, when Child was not at the home, when a weapon was discharged outside the home by Mother's boyfriend to break up an altercation between the uncle and Mother's mother.  On February 16, 2007, after the gun incident, Mother moved to a separate residence where she lived alone and has remained since that time.

On June 5, 2007, DCS filed a petition for termination of Mother's parental rights to Child. Following hearings on October 24-25, 2007, and December 5, 2007, the trial court on January 3,

---

[1] Documents in the record use Child's maternal and paternal surnames interchangeably.  This court will refer to Child using the initial of the father's surname.

[2] The biological father's parental rights were terminated as a result of a separate petition.

2008, issued an order terminating Mother's parental rights on the ground that Child has been abandoned under Tenn Code Ann. § 36-1-113(g)(1) due to Mother's failure to provide a suitable home for Child, as provided in the definition of "abandonment" under Tenn Code Ann. § 36-1-102(1)(A)(ii), and on the ground of persistent conditions under Tenn Code Ann. § 36-1-113(g)(3). The trial court also held that termination of Mother's parental rights was in the best interest of Child. Mother appeals the trial court's decision that termination was in Child's best interest.

## II. Issue Presented

The issue we review is whether the evidence preponderates against the trial court's finding by clear and convincing evidence that termination was in Child's best interest.

## III. Analysis

### A. Standard of Review

A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions. *Troxel v. Granville,* 530 U.S. 57, 65 (2000); *Hawk v. Hawk,* 855 S.W.2d 573, 578-79 (Tenn. 1993); *Ray v. Ray,* 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). Although this right is fundamental and superior to claims of other persons and the government, it is not absolute. *State v. C.H.K.,* 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). This right continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope,* 77 S.W.3d 137, 141 (Tenn. 2002). Although "parents have a fundamental right to the care, custody, and control of their children," this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute. *In re Drinnon,* 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois,* 405 U.S. 645 (1972)).

Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger, "severing forever all legal rights and obligations of the parent." Tenn. Code Ann. § 36-1-113(l)(1). The United States Supreme Court has recognized the unique nature of proceedings to terminate parental rights, stating that "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982) (Rehnquist, J., dissenting)). As a result, "[t]he interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." *Id.* The constitutional protections of the parent-child relationship require certain safeguards before the relationship can be severed. *O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995). This most drastic interference with a parent's rights requires "the opportunity for an individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Termination proceedings are governed by statute in Tennessee. Parties who have standing to seek the termination of a biological parent's parental rights must first prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1). Secondly, they must prove that termination of the parent's rights is in Child's best interest. Tenn. Code Ann. § 36-1-113(c)(2). Because the decision to terminate parental rights has profound consequences, courts must apply a higher standard of proof in deciding termination cases. Therefore, to justify termination of parental rights, the party seeking termination must prove by clear and convincing evidence the ground (or grounds) for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007); *In re Valentine,* 79 S.W.3d 539, 546 (Tenn. 2002).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.,* 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.,* 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, *State v. Demarr,* No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. M.S., Aug. 13, 2003), and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine,* 79 S.W.3d at 546; *In re S.M.,* 149 S.W.3d at 639; *In re J.J.C.,* 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.,* 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray,* 83 S.W.3d at 733; *In re C.W.W.,* 37 S.W.3d at 474.

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to either as to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). The trial court's specific findings of fact are first reviewed and are presumed to be correct unless the evidence preponderates against them. We then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds for terminating the biological parent's parental rights. *In re S.M.,* 149 S.W.3d 632, 640 (Tenn. Ct. App. 2004). The trial court's conclusions of law are reviewed *de novo* and are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn. 1993).

### B. Best Interest of Child

Mother did not appeal the trial court's decision that grounds for termination were properly established under Tenn Code Ann. § 36-1-113(g)(1) and Tenn Code Ann. § 36-1-113(g)(3); therefore, we address only the question of whether it was shown by clear and convincing evidence that it was in the best interest of Child that Mother's parental rights be terminated as mandated under Tenn Code Ann. § 36-1-113(c).

Tenn. Code Ann. § 36-1-113(i) provides a list of factors for courts to consider in determining a child's best interest:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
>
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
>
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian

from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5- 101.

Tenn. Code Ann. § 36-1-113(i). The factors enumerated above are not exhaustive, and "[t]he statute does not require every factor to appear before a court can find that termination is in a child's best interest." *Dep't of Children's Services v. T.S.W.*, No. M2001-01735-COA-R3-PT, 2002 WL 970434, at *3 (Tenn. Ct. App. M.S., filed May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. E.S., filed Oct. 31, 2006). After examining the proof in this case, we do not find by clear and convincing evidence that it is in Child's best interest to terminate Mother's parental rights.

Under the first factor listed in Tenn. Code Ann. § 36-1-113(i)(1), we look to see if Mother has made an adjustment of "circumstance, conduct, or conditions as to make it safe and in the Child's best interest to be in the home" of Mother. Child was originally removed from Mother's care due to Mother's use of illegal drugs during her pregnancy with Child. Courtney Sweet, Mother's DCS case manager, testified that Mother had consistently provided clean drug tests for over a year at the time of trial. Mother completed two outpatient drug rehabilitation programs and a 30-day inpatient drug program. There was no proof that Mother's home, at the time the petition was filed or at the time of trial, was unsuitable, unsafe, or inappropriate for Child. While it is true that prior to February of 2007, Mother was living in a home with her mother and her uncle, both of whom were undesirable influences, Mother moved out of that home and into a separate residence. While it may have taken an incident involving the discharge of a weapon to prompt her to see the need to move, the important fact is that Mother did establish a separate residence away from her relatives. Ms. Sweet testified that Mother's new home was "very, very nice," and Mother had an appropriate room furnished for Child.

The second factor, Tenn. Code Ann. § 36-1-113(i)(2), considers whether Mother has made lasting adjustments after DCS has made reasonable efforts to help Mother. The trial court found that even though DCS has made reasonable efforts, Mother has failed to effect a lasting adjustment. We agree that DCS made reasonable efforts to assist Mother. As to Mother's adjustments, Ms. Sweet testified that Mother completed all requirements of the permanency plan, maintained a job for over a year, gained a work promotion to the position of supervisor, and obtained a "very, very nice" place to live. The record also shows that Mother has paid child support, completed two outpatient drug rehabilitation programs, completed a 30-day inpatient drug program, and maintained regularly scheduled visitation with Child.

The third factor, Tenn. Code Ann. § 36-1-113(i)(3), considers whether Mother has maintained regular visitation and contact with Child. The record shows that Mother has maintained regular visitation with Child while Child was in the custody of DCS. Ms. Sweet testified that Mother has had many more supervised visits than other parents and sought visitation with Child at Christmas.

Under the fourth factor, Tenn. Code Ann. § 36-1-113(i)(4), the court is to consider whether a meaningful relationship has been established between Mother and Child. While it is true that Child, who was three years old, had only lived with Mother for six months, Mother maintained visitation with Child, and Ms. Sweet testified that Mother and Child have formed a strong bond.

Under the fifth factor, Tenn. Code Ann. § 36-1-113(i)(5), the court is to consider the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition. The trial court concluded that a change of caretakers would have a "devastating" effect on Child. We do not find support for this conclusion in the record. While it is true Child has been living with the foster parents for most of her young life, Mother has maintained regular visitation with her, and Mother and Child have developed a strong bond.

The sixth factor, Tenn. Code Ann. § 36-1-113(i)(7), considers whether Mother or any other person residing with Mother "has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household." The record provides no evidence that Mother, who lives alone, has been abusive or neglectful of Child. There was an incident when Mother threw a cell phone at her boyfriend while riding in a vehicle; however, we do not find that is sufficient evidence on which to base a finding that Mother had physically abused an "adult in the family or household."

The seventh factor, Tenn. Code Ann. § 36-1-113(i)(7), requires a consideration of whether the physical environment of Mother's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner. We agree that prior to February, 2007, when Mother's mother and uncle were living with her, Mother's home was not a good environment for Child. However, since Mother moved out of that residence in February of 2007, there has been no indication of any criminal activity or drug use in the home. Mother's DCS case manager did not testify as to any unhealthy or unsafe aspects of Mother's home.

Under the eighth factor, Tenn. Code Ann. § 36-1-113(i)(8), the court should consider whether Mother's mental and/or emotional status would be detrimental to Child. The record does not show that Mother has any mental conditions that would prevent her from providing safe and stable care for Child.

Finally, the court, under the ninth factor, Tenn. Code Ann. § 36-1-113(i)(9), should consider whether Mother has consistently paid support for Child. The record shows, and the trial court recognized, that Mother has consistently paid support for Child.

Considering the totality of the circumstances as required under Tenn. Code Ann. § 36-1-113(i), it appears that Mother has made numerous mistakes and, on several occasions, exercised poor judgment, but to her credit has, with the assistance of DCS, substantially rehabilitated herself. While there have been several "bumps" in the road during Mother's journey of rehabilitation, we conclude that Mother has made significant progress. She completed the requirements of the permanency plan, maintained a job for over a year, gained a work promotion, paid child support, completed two outpatient drug programs, completed a 30-day inpatient drug program, maintained regularly

scheduled visitation with Child, has an appropriate place to live, and has not tested positive for illegal drugs since September 2006.

While it is true that Mother could relapse into her previous lifestyle, the same is true for any parent whose child has been removed. Considering the statutory factors in light of the record as a whole, we hold that the evidence preponderates against the trial court's conclusion that DCS proved by clear and convincing evidence that termination of Mother's parental rights was in Child's best interest.

### IV. Conclusion

In reaching our conclusion in this case, we have carefully considered the proof presented in light of Mother's fundamental constitutional parental rights, and the severity and irreversible finality of a judgment terminating her parental rights, which affects not only her, but also her child. We are also guided by our standard of review requiring clear and convincing evidence, which must eliminate "any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). For all of the reasons discussed above, we hold that the proof presented by DCS and relied upon by the trial court does not clearly and convincingly demonstrate that termination of Mother's parental rights is warranted in this case.

For the foregoing reasons, we reverse the judgment of the juvenile court and dismiss the petition to terminate. Costs of appeal are assessed to the appellee, the Tennessee Department of Children's Services.

_____
SHARON G. LEE, JUDGE